SEALED

DAVID REECE (TX Bar No. 24002810)
Email: ReeceD@sec.gov
KEEFE BERNSTEIN (TX Bar. No. 24006839)
Email: BernsteinK@sec.gov
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
Telephone: (817) 978-3821
Facsimile: (817) 978-2700

Attorneys for Plaintiff

✓ FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD
OCT 13 2015
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ASCENERGY LLC and JOSEPH (a/k/a JOEY) GABALDON,<br><br>Defendants,<br><br>PYCKL LLC and ALANAH ENERGY, LLC,<br><br>Relief Defendants. | **2:15-cv-01974-GMN-PAL** |
|---|---|

**PLAINTIFF'S COMPLAINT**
**(FILED UNDER SEAL)**

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d)(1), & 77v(a)], and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), & 78aa].

2. Defendants Ascenergy and Gabaldon have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district. Defendant Ascenergy is also a Nevada limited liability company that states its principal place of business is in this district.

**SUMMARY**

4. This is an emergency action to stop an ongoing securities offering fraud by Ascenergy LLC ("Ascenergy"), which purports to be an oil and gas company, and its CEO Joseph (a/k/a Joey) Gabaldon ("Gabaldon"). Ascenergy has been soliciting investors on crowdfunding websites and its own website to purchase overriding royalty interests in undeveloped oil and gas wells.

5. Ascenergy's disclosures contain multiple, material misrepresentations about the company and the nature of the offering. In summary, Ascenergy falsely holds itself out as a credible energy company, and it presents the investment as a novel and extremely low-risk

opportunity that will essentially guarantee investors out-sized returns. In reality, Ascenergy is, at best, offering a high-risk investment in undeveloped and unproven conventional oil and gas wells.

6. Ascenergy has raised at least approximately $5 million from approximately 90 investors nationwide and internationally. Ascenergy has already spent at least $1.2 million of the offering proceeds, but only a few thousand dollars appear to have been used for oil and gas-related expenses. Instead, a significant part of the $1.2 million has been spent on payments to Gabaldon or companies he controls, or for expenses unrelated to the oil & gas business, including, by way of example, foreign travel, fast food restaurants, Apple stores and iTunes, dietary supplements, and personal care products.

7. Immediately after the Commission's staff (the "Staff") subpoenaed Gabaldon and other company employees, Ascenergy shut down public access to its website and transferred $3.8 million–virtually all of the remaining offering proceeds—to Pyckl LLC, a San Jose, California company that has no apparent connection to the oil and gas business. Ascenergy, Gabaldon, and his colleagues have also refused to provide any information to the Commission about the company, the purported investment, or the use of investor funds.

8. Contemporaneously with the filing of this Complaint, Plaintiff is filing an application seeking emergency relief, including a TRO, asset freeze, accounting, expedited discovery, preservation order, and authorization for alternative service. Emergency relief is necessary and warranted to stop the ongoing fraudulent activity and to prevent Defendants and Relief Defendants from further moving or dissipating assets and evidence. In addition, Plaintiff is moving for a preliminary injunction and asserting claims for relief against Defendants for violations of the antifraud provisions of the federal securities laws and an equitable claim against Relief Defendants seeking return of the investor funds.

**DEFENDANTS**

9. Ascenergy LLC ("Ascenergy") is a Nevada limited liability company formed in 2012 that lists its principal place of business as being in Las Vegas, Nevada. Neither Ascenergy nor its securities are registered with the Commission in any capacity.

10. Joseph (a/k/a Joey) Gabaldon ("Gabaldon") is believed to live in Southern California. He is the CEO of Ascenergy, and he is believed to control Ascenergy and to own some or all of Ascenergy through a company called Alanah Energy LLC. Gabaldon has never been registered with FINRA or the Commission in any capacity.

**RELIEF DEFENDANTS**

11. Pyckl LLC ("Pyckl") is a California limited liability company formed in 2012 that is believed to have its principal place of business in San Jose, California. Benjamin Sasson, a U.K. citizen residing in the San Jose area, is believed to be Pyckl's CEO and founder. On his LinkedIn public entry, Sasson describes Pyckl as an "[e]nd-to-end mobile and web application consultancy and development studio." Ascenergy transferred $3.8 million of investor funds to Pyckl shortly after the Staff issued subpoenas to Ascenergy and Gabaldon. Pyckl is not registered with the Commission in any capacity, nor does it have any securities that are registered with the Commission.

12. Alanah Energy, LLC ("Alanah") is a Nevada limited liability company formed in 2011 which is believed to have its principal place of business in Nevada or California. Alanah Energy is believed to be controlled by Gabaldon. Ascenergy has transferred approximately $100,000 to Alanah. Neither Alanah Energy nor its securities are registered with the Commission in any capacity.

## FACTUAL ALLEGATIONS

**Ascenergy and Gabaldon**

13. Ascenergy was formed in 2012, and it purports to be an oil and gas exploration and development company focused on conventional drilling in sandstone formations. Ascenergy has no known oil and gas revenues or track record of reserve identification, drilling, or production. Ascenergy has no publicly identifiable physical offices and appears to primarily conduct its business online.

14. Gabaldon is the public face of Ascenergy and its CEO. Gabaldon is a signatory on Ascenergy's bank accounts, and has the power to act for and control the company. Ascenergy's website describes Gabaldon as a serial entrepreneur who was able to retire at an early age by developing and applying his proprietary hedging methods to the stock market.

**Ascenergy Commences First Royalty Offering**

15. On July 11, 2014, Ascenergy filed a Form D with the Commission seeking to offer debt securities, mineral property securities, or "ORRI Investment Contracts" under the Rule 506(c) securities registration exemption. The filing states that Ascenergy has no revenues, and that the company's principal place of business is in Las Vegas, Nevada. The filing further estimates that no proceeds of the offering will be used for payments to executive officers identified in the filing. The filing identifies Gabaldon as Ascenergy's CEO, and he signs the filing on Ascenergy's behalf as CEO.

16. Around this time, Ascenergy began a general solicitation offering investors the opportunity to purchase overriding royalty interests ("ORRI") in five initial, undeveloped oil and gas wells. An ORRI is commonly defined as a fractional, undivided interest in oil and gas or the sale of proceeds of oil and gas. An ORRI holder typically receives a portion of the working interest owners' revenue stream and does not pay for development or operating costs.

17. Ascenergy made the general solicitations on its own website and several crowdfunding websites, including crowdfunding.com, equitynet.com, fundable.com, and angel.co. Ascenergy initially stated that it was seeking to raise $5 million, but later raised that amount to $7 million.

18. Ascenergy told investors that for each $100,000 invested, the investor would receive a 1% ORRI in the production from one of Ascenergy's initial five wells. In addition, investors would be entitled to roll their ORRI to subsequent wells if Ascenergy failed to meet guaranteed production targets for the well the investor selected. The terms were later changed to allow investors to purchase a 1% ORRI interest in all of the first five wells (.02% per well), instead of a 1% ORRI in one specific well.

19. To complete the investment, Ascenergy instructed investors to sign an Overriding Royalty Interest Purchase Agreement. Investors typically wired funds to Ascenergy's Wells Fargo bank account in Las Vegas, which was identified on the company website, or sent checks to the company.

20. The ORRI investment that Ascenergy offered and sold is a security within the meaning of the Securities Act and the Exchange Act.

**Ascenergy Makes False Disclosures And Omissions And Creates a Deceptive Facade**

21. Ascenergy posted a series of false and misleading statements on its website and the crowdfunding sites to spur interest in the offering and to inflate the company's credibility.

22. Ascenergy describes the investment as having "exceptionally low risk," and an "extremely low risk profile." In fact, this is a high risk investment in undeveloped and unproven wells, and the investors will bear virtually all of the risks of an investment in an exploration stage oil and gas project.

23. Ascenergy describes the investment has having no profit risk, because investors will be paid from gross revenues before operating expenses, and further states that the "investment will be profitable as long as there is oil and gas to sell regardless of price." Yet, investors will bear significant profit risk, including if the operator shuts in wells because expenses are too high to justify production based on price and volume.

24. Ascenergy states that its team of geologists, petroleum engineers, and leasing experts spent years evaluating over 200 properties, which it has narrowed down to its Top 20 Signature Properties. At one point, Ascenergy indicated that it had already secured its Top 20 properties. In fact, as of at least September 3, 2015, Ascenergy's listed lead petroleum engineer had not evaluated a single property for Ascenergy, and had received no information indicating any properties have been selected, much less secured.

25. Ascenergy states that it will be "profitable even at $20 per barrel" and "as an investor you will receive monthly income that we project will result in a 8X return over the life of your investment at a price of $40/barrel for oil." These stated economics are not reasonable or realistic.

26. Ascenergy describes the investment as "highly liquid" and that selling the investment will take relatively little time. To the contrary, ORRI in undeveloped properties are typically hard to sell and that there is likely no market for resale of the interests Ascenergy is offering.

27. Ascenergy states that it recently discovered $40 million in proven reserves and has produced more than a million dollars in oil and gas revenue. But these figures, even if true, relate to an entirely different company called Southern Star in which Gabaldon may have an interest. Ascenergy has no known oil and gas revenues or track record of reserve identification, drilling, or production,

28. Ascenergy claims to have assembled a team with over 150 years of industry experience. Yet, at least one of the persons referenced, who purportedly makes up 40 years of that experience, has done no work for Ascenergy, has no role at the company, and did not authorize Ascenergy to use his bio to crowdfund.

29. Ascenergy claims that it is "partners" with several established industry participants, including Schlumberger and Baker Hughes, and put their company logos on the Ascenergy website and crowdfunding postings. As the Defendants knew or were severely reckless in not knowing, this is false. For example, Schlumberger and Baker Hughes do not have any partnership or other similar relationship with Ascenergy, and neither authorized Ascenergy to use their respective names and trademarks.

30. In an apparent attempt to vouch for the offering, Ascenergy assures investors on its website that its management is substantially invested in the offering. In fact, as reflected in Ascenergy's bank records, neither Gabaldon nor other members of Ascenergy's listed management have invested significant amounts in the offering.

31. Ascenergy claimed on one or more crowdfunding websites that it had reached at least 93% of its $7 million fundraising goal and indicated investors needed to act fast to participate. In fact, even after that claim was made, Ascenergy had only raised $5 million.

32. Ascenergy written offering materials also contain false and misleading statements and fail to properly disclose the risk of the investment. Ascenergy used a written offering term sheet to investors titled "Monthly Residual Income aka 'Mailbox Money" and an "Ascenergy Presentation" that repeated many of the same misleading claims about the company and the investment discussed above, including the claims about the "signature properties" it has purportedly identified, its history of discovering reserves, its partnerships with reputable industry participants, and its projections of outsized returns.

33. Ascenergy may, in some cases, have also provided investors an offering memorandum. But Ascenergy took the position that it would only provide investors an offering memorandum if they specifically requested one. And in any event, the offering memorandum did not fully, fairly, or accurately disclose the risks of the investment to the investors, if any, who received one or correct Ascenergy's other false and misleading misrepresentations or omissions.

34. In addition, and as pleaded in more detail below, rather than using the funds raised from investors to acquire and develop oil and gas properties, as the defendants led investors to believe they would, the defendants have diverted most of the offering proceeds to a company apparently unrelated to the oil and gas business and spent substantial amounts of the investors' funds on payments to Gabaldon and on other inappropriate items.

35. The statements identified above constitute false, or at a minimum, misleading misrepresentations and omissions. These misrepresentations and omissions are undoubtedly material to a reasonable investor, because a reasonable investor would consider false statements and omissions about the nature and integrity of the enterprise, the risk and performance of the investment, and the use of their funds important in making their investment decision.

36. Defendants made the misrepresentations and omission. Ascenergy affirmatively published misstatements and omissions, including on its website and other websites and in written materials. Gabaldon controls Ascenergy. Gabaldon personally made several of the misrepresentations and omissions, including on the Ascenergy website and during interviews, where he stated, among other claims, that the company could be profitable at $20 per barrel oil.

37. Defendants knew, or were reckless in not knowing, that these statements were false and/or misleading. Defendant knew that they were misstating or omitting key facts about the nature and integrity of the enterprise, the risk and performance of the investment, and the use of investor funds.

38. By making these statements and omissions to fraudulently solicit investor funds, the defendants have acted with a high degree of scienter. Gabaldon's scienter is also imputed to Ascenergy because Ascenergy acts through Gabaldon.

39. Defendants' actions are also part of a calculated scheme, and their fraudulent conduct goes well beyond misstatements to include a series of other deceptive acts. Defendants have inflated their credentials and experience and created the false impression of fact that Ascenergy is a company with a large staff of professionals actively working on oil and gas projects. Defendants have falsely claimed "partnerships" and other associations with reputable industry participants and then used their logos without their consent. These actions, and others, are all part of a scheme to fabricate an air of legitimacy to their enterprise, which they are using to obtain and misuse investor money in connection with the offer and sale of securities. Further, Defendants' efforts to evade and obstruct the Staff's investigation have delayed exposure of the scheme.

**Ascenergy Stonewalls the Commission**

40. On July 7, 2015, the Staff sent Ascenergy a voluntary request seeking information about the company and the offering. On July 27, 2015, Gabaldon initially responded by telling the Staff that he was out of the country indefinitely but that we could expect to hear from him sometime in either August or September.

41. On July 28, 2015, the Staff served a document subpoena to Ascenergy seeking essentially the same information covered by the voluntary request. Shortly thereafter, Ascenergy pulled its claims about the offering from its public website and the crowdfunding sites.

42. Gabaldon then sent the Staff a series of letters contesting the U.S. government's and the Commission's jurisdiction and authority over him and Ascenergy. In his letters,

Gabaldon makes clear that Ascenergy will not provide any information to the Commission. For example, Gabaldon's August 7, 2015 letter to the Commission he states (emphasis in original):

> As I have previously mentioned to you, in a previous letter/presentment, if I should say or make a statement, inadvertently, that sounds like an answer to one of your requests or demands, for information, please realize that, until you establish your jurisdiction (authority), that applies to me and my company and until you produce a contract, with our-autographs, in blue-wet-ink, and the contract producing full-disclosure, I DO NOTANSWER YOUR QUESTIONS NOR WILL I PROVIDE ANY DOCUMENTS! If there is any answering, to be done, it will be from you...
>
> ....Throughout your presentations you have suggested, subliminally-suggested, that I seek advice or hire an attorney. Statement! Would he/she not be part of the same cabal that you belong to? How could that help me, the attorney would have a superior-allegiance, *[than he/she would/could have to me]* and would/could have "NO" allegiance to me. Are you both not under the same "PRIVATE-CORPORATION," i.e. the UNITED STATES, INC., of which I have the E.I.N. AND THE DUNS#?

43. Thereafter, the Staff attempted to serve testimony subpoenas to Gabaldon and other members of the Ascenergy management team. Gabaldon and all but one of his colleagues have refused to appear for testimony, have not accepted UPS deliveries from the Commission, and have either not complied with valid service or have not responded to diligent attempts to effect service with a process server. In fact, Gabaldon has encouraged one or more persons not to accept subpoenas from the Commission.

**Ascenergy and Gabaldon Misuse Investor Funds**

44. Through August 31, 2015, Defendants raised approximately $5 million from approximately 90 different investors in several different states and countries. The funds were initially deposited from multiple states via wire or other means into an account at Wells Fargo Bank in Las Vegas. Until late August 2015, the company had a large cash balance of approximately $3.9 million in its accounts at Wells Fargo Bank.

45. But on August 20, 2015, just two days after the Staff issued testimony subpoenas, Ascenergy gathered its liquid funds into a single bank account. Then, on August 24 and 26, the

company transferred $3.8 million—virtually all of the remaining offering proceeds—to relief defendant Pyckl, a company believed to be controlled by a U.K. citizen named Benjamin Sasson. Pyckl and its CEO Benjamin Sasson have no apparent connection to the oil and gas industry.

46. The bank records further indicate that Ascenergy has spent over $1.2 million of the money it raised. Of the $1.2 million, only approximately $2,000 appears to have been spent on oil and gas related expenses. But there are numerous payments out of the $1.2 million for items apparently unrelated to the purported offering, including for foreign travel, gas stations, Apple stores and iTunes, restaurants, hotels and motels, dietary supplements, and web design.

**Ascenergy Commences Royalty Fund Offering**

47. Ascenergy is the managing member of Ascenergy Royalty Fund LLC ("Ascenergy Royalty Fund"). On July 31, 2015, Ascenergy Royalty Fund filed a Form D with the Commission seeking to offer equity securities and pooled investment fund interests under the Rule 506(c) securities registration exemption. The Form D states a total offering amount of $10 million. The form further indicates that this is a new offering with no units having yet been sold. Ascenergy is listed as the fund's managing member, and Gabaldon signs as the CEO of Ascenergy.

**FIRST CLAIM FOR RELIEF**

**Fraud in the Offer and Sale of Securities**
**Violations of Section 17(a) of the Securities Act**
**(Against Defendants Ascenergy and Gabaldon)**

48. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

49. By engaging in the conduct described herein, Defendants directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce or of the mails:

a. employed devices, schemes or artifices to defraud;

b. obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

50. With regard to their violations of Section 17(a)(1) of the Securities Act, Defendants acted intentionally, knowingly or with severe recklessness with respect to the truth.

51. With regard to their violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act, Defendants acted at least negligently.

52. By engaging in this conduct, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §§ 77q].

## SECOND CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder**
**(Against Defendants Ascenergy and Gabaldon)**

53. The Commission realleges and incorporates by reference paragraphs 1 through 52 above.

54. By engaging in the conduct described herein, Defendants directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly:

a. employed devices, schemes, and artifices to defraud;

b. made untrue statements of material fact or omitted to state material facts

c. necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

d. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities and upon other persons.

55. Defendants engaged in this conduct intentionally, knowingly or with severe recklessness with respect to the truth

56. By engaging in this conduct, Defendants violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### Equitable Claim against Relief Defendants Pyckl and Alanah

57. The Commission realleges and incorporates by reference paragraphs 1 through 56 above

58. Relief Defendants Pyckl and Alanah, directly or indirectly, received or possess funds, or benefited from the use of funds, which are the proceeds of the unlawful activity of the Defendants described above.

59. Relief Defendants Pyckl and Alanah have no legitimate claim to those funds and would be unjustly enriched to the detriment of injured investors if they were permitted to keep the funds.

60. The Commission is entitled to an order or other relief, pursuant to common law equitable principles and pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], requiring Relief Defendants Pyckl and Alanah to disgorge the proceeds of the illegal

activities alleged herein that they have received or possess or from which they have benefited, either directly or indirectly.

**RELIEF REQUESTED**

The Commission respectfully requests that the Court enter judgment and orders:

(a) Temporarily, preliminarily, and permanently enjoining Defendants and their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. §§ 5 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(b) Freezing the assets of Defendants and Relief Defendants;

(c) Ordering expedited discovery in this matter;

(d) Ordering each Defendant to provide an accounting;

(e) Ordering Defendants and Relief Defendants to preserve all documents and information relevant to this matter;

(f) Ordering Defendants to disgorge, jointly and severally, all ill-gotten gains and/or unjust enrichment realized by each of them, plus prejudgment interest;

(g) Ordering each Defendant to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

(h) Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

(d) Granting all other relief to which the Commission may be entitled.

Dated: October 13, 2015

Respectfully submitted,

David B. Reece
Texas Bar No. 24002810
Keefe Bernstein
Texas Bar No. 24006839
SECURITIES AND EXCHANGE COMMISSION
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6476 (phone) (dbr)
(817) 900-2607 (phone) (kb)
(817) 978-4927 (facsimile)

Attorneys for Plaintiff