# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>ASCENERGY LLC and JOSEPH (a/k/a JOEY) GABALDON, )<br>)<br>Defendants, )<br>)<br>PYCKL LLC and ALANAH ENERGY, LLC, )<br>)<br>Relief Defendants. )<br>_____ ) | Case No.: 2:15-cv-01974-GMN-PAL<br><br>**ORDER** |

This action arises out of the Securities Act of 1933 [15 U.S.C. § 77q(a)] (the "Securities Act") and the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j(b)] (the "Exchange Act"), and is brought by Plaintiff, the Securities and Exchange Commission (the "SEC" or "the Commission") against Defendants Ascenergy LLC ("Ascenergy") and Joseph (a/k/a Joey) Gabaldon ("Gabaldon") (collectively "Defendants") and Relief Defendants Pyckl LLC ("Pyckl") and Alanah Energy, LLC ("Alanah Energy") (collectively "Relief Defendants"). Before the Court is the SEC's *Ex Parte* Motion for Temporary Restraining Order (ECF No. 5). For the reasons discussed below, the motion is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

The Commission alleges that Gabaldon is the CEO of Ascenergy, and he owns and controls some or all of Ascenergy through his control of Alanah Energy. (Compl. ¶¶ 9, 12, ECF No. 1).  The Commission further alleges that on behalf of Ascenergy, a Nevada limited liability company, Gabaldon has made multiple material misrepresentations about Ascenergy while

soliciting investors to purchase interests in undeveloped oil and gas wells and, as a result, has defrauded approximately 90 investors of at least $5 million. (*Id.* ¶¶ 4–6, 9, 11–12).

The Commission alleges Defendants' unlawful conduct as follows:

- Ascenergy has been soliciting investors on crowdfunding websites and its own website to purchase overriding royalty interests ("ORRI") in undeveloped oil and gas wells. (*Id.* ¶ 4).

- Ascenergy's disclosures contain multiple, material misrepresentations about the company and the nature of the offering.  In summary, Ascenergy falsely holds itself out as a credible energy company, and it presents the investment as a novel and extremely low-risk opportunity that will essentially guarantee investors out-sized returns.  In reality, Ascenergy is, at best, offering a high-risk investment in undeveloped and unproven conventional oil and gas wells. (*Id.* ¶ 5).

- Ascenergy posted a series of false and misleading statements on its website and the crowdfunding sites to spur interest in the offering and to inflate the company's credibility, including:

  o Describing the investment as having "exceptionally low risk," and an "extremely low risk profile."  In fact, this is a high risk investment in undeveloped and unproven wells, and the investors will bear virtually all of the risks of an investment in an exploration stage oil and gas project.

  o Describing the investment has having no profit risk, because investors will be paid from gross revenues before operating expenses, and further states that the "investment will be profitable as long as there is oil and gas to sell regardless of price."  Yet, investors will bear significant profit risk, including if the

operator shuts in wells because expenses are too high to justify production based on price and volume.

- o Stating that its team of geologists, petroleum engineers, and leasing experts spent years evaluating over 200 properties, which it has narrowed down to its Top 20 Signature Properties. At one point, Ascenergy indicated that it had already secured its Top 20 properties. In fact, as of at least September 3, 2015, Ascenergy's listed lead petroleum engineer had not evaluated a single property for Ascenergy, and had received no information indicating any properties have been selected, much less secured.

- o Stating that it will be "profitable even at $20 per barrel" and "as an investor you will receive monthly income that we project will result in a 8X return over the life of your investment at a price of $40/barrel for oil." These stated economics are not reasonable or realistic.

- o Describing the investment as "highly liquid" and that selling the investment will take relatively little time. To the contrary, ORRI in undeveloped properties are typically hard to sell and there is likely no market for resale of the interests Ascenergy is offering.

- o Stating that it recently discovered $40 million in proven reserves and has produced more than a million dollars in oil and gas revenue. But these figures, even if true, relate to an entirely different company called Southern Star in which Gabaldon may have an interest. Ascenergy has no known oil

and gas revenues or track record of reserve identification, drilling, or production.

o  Claiming to have assembled a team with over 150 years of industry experience.  Yet, at least one of the persons referenced, who purportedly makes up 40 years of that experience, has done no work for Ascenergy, has no role at the company, and did not authorize Ascenergy to use his bio to crowdfund.

o  Claiming that it is "partners" with several established industry participants, including Schlumberger and Baker Hughes, and put their company logos on the Ascenergy website and crowdfunding postings.  As the Defendants knew or were severely reckless in not knowing, this is false.  For example, Schlumberger and Baker Hughes do not have any partnership or other similar relationship with Ascenergy, and neither authorized Ascenergy to use their respective names and trademarks.

o  Assuring investors on its website that its management is substantially invested in the offering.  In fact, as reflected in Ascenergy's bank records, neither Gabaldon nor other members of Ascenergy's listed management have invested significant amounts in the offering.

o  Claiming on one or more crowdfunding websites that it had reached at least 93% of its $7 million fundraising goal and indicated investors needed to act fast to participate.  In fact, even after that claim was made, Ascenergy had only raised $5 million. (*Id.* ¶¶ 21–31).

- Ascenergy has raised at least approximately $5 million from approximately 90 investors nationwide and internationally.  Ascenergy has already spent at least $1.2 million of the offering proceeds, but only a few thousand dollars appear to have been used for oil and gas-related expenses.  Instead, a significant part of the $1.2 million has been spent on payments to Gabaldon or companies he controls, or for expenses unrelated to the oil & gas business, including, by way of example, foreign travel, fast food restaurants, Apple stores and iTunes, dietary supplements, and personal care products. (*Id.* ¶ 6).

- Immediately after the Commission's staff (the "Staff") subpoenaed Gabaldon and other company employees, Ascenergy shut down public access to its website and transferred $3.8 million—virtually all of the remaining offering proceeds—to Pyckl a San Jose, California company that has no apparent connection to the oil and gas business.  Ascenergy, Gabaldon, and his colleagues have also refused to provide any information to the Commission about the company, the purported investment, or the use of investor funds. (*Id.* ¶ 7).

The Commission presents three causes of action in its Complaint:

(1) Fraud in the offer and sale of securities in violation of Section 17(a) of the Securities Act against Defendants;

(2) Fraud in connection with the purchase or sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 against Defendants; and

(3) Equitable claims of unjust enrichment and disgorgement against the Relief Defendants.

(*Id.* ¶¶ 48–60).

For its claims, the Commission seeks an order providing the following relief:

(a) Enjoining Defendants from violating Section 17(a) of the Securities Act [15 U.S.C. §§ 5 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(b) Freezing the assets of Defendants and Relief Defendants;

(c) Ordering expedited discovery;

(d) Ordering each Defendant to provide an accounting;

(e) Ordering Defendants and Relief Defendants to preserve all documents and information relevant to this matter;

(f) Ordering Defendants to disgorge, jointly and severally, all ill-gotten gains and/or unjust enrichment realized by each of them, plus prejudgment interest;

(g) Ordering each Defendant to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

(h) Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

(i) Granting all other relief to which the Commission may be entitled.

(*Id.* at 15–16).

## II.   LEGAL STANDARD

Section 20(b) of the Securities Act of 1933 and Section 21(d) of the Securities Exchange Act of 1934 provide that the SEC may obtain a permanent or temporary injunction or restraining order without a bond upon a proper showing. 15 U.S.C. §§ 77t(b), 78u(d).  The statutes do not define what Congress meant by a "proper showing" so courts have turned to the

standards for injunctive orders within the Federal Rules of Civil Procedure. *See SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980).  Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).  The Supreme Court has held that a preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

However, the SEC argues in this case that its burden when seeking an injunction is lower than that of a private party, and that it must demonstrate only: (1) a *prima facie* case that Defendants have violated the federal securities laws and (2) a reasonable likelihood that Defendants will repeat their violations. (Mot. for TRO, 11:25–13:7, ECF No. 5).  As grounds for this argument, the SEC cites to several recent preliminary injunction orders from various district courts in California, *see, e.g.*, *SEC v. Schooler*, 902 F. Supp. 2d 1341, 1345 (S.D. Cal. 2012), and a pre-*Winter* opinion in which the Ninth Circuit Court of Appeals held that "when

'the public interest is involved in a proceeding of this nature, [the district court's] equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" *FSLIC v. Sahni,* 868 F.2d 1096, 1097 (9th Cir. 1989) (quoting FTC v. *H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982)).

Likewise, the Second and Eleventh Circuits have authored pre-Winter decisions finding that the SEC is entitled to a preliminary injunction where it has only demonstrated (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated. *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975); *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 n.2 (11th Cir. 1999).  The court in *Schooler* points out that, "the Second Circuit in *Mgmt. Dynamics* called it a 'crucial error' to 'assum[e] that SEC enforcement actions seeking injunctions are governed by criteria identical to those which apply in private injunction suits," and that "while injunctive relief in private actions is 'rooted wholly in the equity jurisdiction of the federal court,' SEC suits for injunctive relief are 'creatures of statute.'" *Schooler*, 902 F. Supp. 2d at 1344.

Although the authority cited by the SEC is not controlling, the reasoning in *Schooler* is compelling.  This Court is not aware of a post-*Winter* SEC enforcement action where the *Winter* standard was applied.  Pre-*Winter*, the Ninth Circuit recognized that such cases were treated differently, holding that "[i]n statutory enforcement cases where the government has met the 'probability of success' prong of the preliminary injunction test, [courts] presume it has met the 'possibility of irreparable injury' prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public." *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 398 (9th Cir. 1992).  Additionally, just as the passage of a statute implies a finding by Congress that violations harm the public leading to a presumption of irreparable injury, it follows that it would also lead to a presumption of the injunction being in the public interest. *See Schooler*, 902 F. Supp. 2d at 1345 n.2.

The resulting effect of applying these two presumptions to satisfy the irreparable injury and public interest prongs of the *Winter* test is that the SEC is then only required to show that it is likely to succeed on the merits and that the equities tip in its favor.  However, there remains yet another difference in the standards used by the SEC for both these last two prongs in their boilerplate proposed order.  First, merely making a prima facie case is a much lower standard than showing a likelihood of success.  Furthermore, although a likelihood that the wrong will be repeated will factor into a determination that the balance of equities tips in the SEC's favor, the two are not necessarily equivalent.  Neither the SEC's motion nor the Order in *Schooler* present substantial justification for lowering the standard here in the context of an *ex parte* request for a Temporary Restraining Order as the *Schooler* decision involved a preliminary injunction where the defendant submitted a response and had an opportunity to be heard during the court hearing.[1]  Nonetheless, despite this apparent lack of uniformity on the applicable standard, the Court need not decide the issue here because the Court finds that the SEC meets the higher standard under the present facts.

## III.   DISCUSSION

As discussed below, the Court finds that the SEC has made a sufficient showing to establish a likelihood of success on the merits.  Likewise, the Court finds that the balance of equities tips in the SEC's favor and that an injunction is in the public interest because of the likelihood of repeated violations and the public's strong interest in preserving illicit proceeds of fraud.  However, the SEC has not provided sufficient justification for their request that the Court allow alternative means of service in relation to service of the complaint, the Motion for Temporary Restraining Order, and this Court's Order  upon Ascenergy and the Relief Defendants.

---

[1] While the *Schooler* Court does reference a prior TRO, it appears that the modified legal standard advocated by the SEC was only proposed or addressed during the preliminary injunction stage.

### A.   Likelihood of Success on the Merits

The Court finds that there is a substantial likelihood that the SEC will prevail on its first claim that Defendants violated Section 17(a) of the Securities Act and its second claim that Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5. Those sections prohibit making fraudulent misrepresentations in the offer, purchase, and sale of securities. *See* 15 U.S.C. §§ 77q(a) and 77j(b); 17 C.F.R. § 240. 10b-5; *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855–56 (9th Cir. 2001).  False and misleading statements violate Section 17(a) and Section 10(b) of the Exchange Act promulgated under Rule 10b-5 if they are (1) material, (2) made with scienter, (3) made "in connection with" the sale of securities, and (4) employ the use of means or instrumentality of interstate commerce.  17 C.F.R. § 240.10b–5; *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976).  A misleading statement is material if a reasonable investor would consider the statement important to an investment decision. *Basic*, 485 U.S. at 231-32.  Scienter is the mental state embracing an intent to deceive, manipulate or defraud and can be satisfied through a showing of reckless conduct.  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568–70 (9th Cir. 1990).  The "in connection with" requirement is met if the fraud and the sale of securities coincide.  *See SEC v. Zandford*, 535 U.S. 813, 822 (2002).

The exhibits attached to the SEC's motion evidence a number of misleading statements made by Gabaldon on behalf of Ascenergy.  For example, the SEC's exhibits show that Ascenergy's primary and crowdfunding websites contained numerous false and misleading claims, including: (1) that Ascenergy recently discovered $40 million in proven reserves and has produced more than a million dollars in oil and gas revenue; (2) that Defendants had already secured its "Top 20 properties"; (3) that Defendants have assembled a team with over 150 years of industry experience; and (4) that Ascenergy "partners" with several established industry participants, including Schlumberger and Baker Hughes, and put their company logos

on the Ascenergy website and crowdfunding postings. However, the SEC's evidence also shows that Ascenergy's listed lead petroleum engineer had not evaluated a single property for Ascenergy, and had received no information indicating any properties have been selected, much less secured; that at least one of the persons referenced as being on Ascenergy's team—who purportedly makes up 40 years of its 150 years of experience—has done no work for Ascenergy, has no role at the company, and did not authorize Ascenergy to use his bio to crowdfund; and that Schlumberger and Baker Hughes do not have any partnership or other similar relationship with Ascenergy, and neither authorized Ascenergy to use their respective names and trademarks.

All of this information—the size and value of sites with reserves already owned, the experience of Defendants in the industry, and partnerships with established industry participants—would be extremely important to a rational investor. Further, the extent of the misrepresentations indicate that these statements were made with knowledge of their falsity and the specific intent to deceive, and that the statements coincided with offers and sales of securities[2] and were published on the website where investments were solicited. Finally, as previously discussed, Defendants employed the internet to sell the securities. Consequently, the court concludes that the misrepresentations were material, made with scienter in connection with the sale of securities, employing means and instrumentalities of interstate commerce. Thus, the SEC is likely to prevail on its Section 17(a) and Section 10(b) claims.

### B. Balance of Equities

Likewise, the balance of equities weighs in favor of an injunction. "A preliminary

---

[2] Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act expressly define a "security" to include a "fractional undivided interest in oil, gas, or other mineral rights" or any "certificate of interest or participation in any . . . oil, gas, or other mineral royalty or lease." 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10); *see also Simon Oil Co., Ltd. v. Norman*, 789 F.2d 780, 781 (9th Cir. 1986) (recognizing that fractional undivided interests in oil, gas, and other mineral rights are specifically included within the definition of securities in the Securities Act).

injunction is an extraordinary remedy never awarded as a right." *Winter*, 555 U.S. at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 688 (2008). In deciding whether to grant a preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). When the government is seeking an injunction and the "district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989). Additionally, "the public interest in preserving the illicit proceeds of [a defendant's fraud] for restitution to the victims is great. *Id.*

In securities fraud cases, courts must consider the reasonable likelihood of future violations and the resulting harm to the public. *See SEC v. Fehn*, 97 F.3d 1276, 1295–96 (9th Cir. 1996); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). "The existence of past violations may give rise to an inference that there will be future violations." *Murphy*, 626 F.2d at 655. In assessing this likelihood, courts consider the totality of the circumstances and consider factors such as the degree of scienter, the recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the defendant's profession, and the sincerity of defendant's assurances against future violations. *Id.*

Here, the majority of the SEC's requested injunctions instruct the Defendant to obey the law. The harm of such injunctions to Defendants is non-existent as they are, and have always been, obligated to conduct themselves and their business in accordance with the law.

Of greater concern are the injunctions requesting the freezing of assets, expedited discovery, and alternative means of service. The private burden of these injunctions is great. However, Defendants have demonstrated a pattern of violations that establish the public's harm and interest in an injunction is greater. Defendants have been obtaining investments for a number of years and have persuaded at least 90 investors to contribute an aggregate of at least

$5 million.  The SEC's exhibits indicate that these investments were acquired through substantial deceit.  Additionally, the SEC has shown that Defendants have dispensed investor funds and used them on personal expenses.  Accordingly, the Court determines that the public interest in preserving the investment proceeds is greater than the Defendants' burden resulting from an injunction.

The Court has authority to freeze assets under its "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok Int'l, Ltd v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  These powers include the authority to freeze assets of both parties and nonparties. *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003); *SEC v. Int'l Swiss Invs. Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990).  Courts use freeze orders to prevent waste and dissipation of assets and to ensure their availability for disgorgement for the benefit of victims of the fraud. *See, e.g., Hickey*, 322 F.3d at 1132 (affirming asset freeze over nonparty brokerage firm controlled by defendant to effectuate disgorgement order against defendant).  Indeed, the Ninth Circuit has found that "the public interest in preserving the illicit proceeds [of a defendant's fraud] for restitution to the victims is great." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999).

To obtain an asset freeze, the SEC need only establish that it is likely to succeed on the merits of its claims, and that there is a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted. *Johnson v. Couturier*, 572 F.3d 1067, 1085 n.11 (9th Cir. 2009).  The assets of Defendants and Relief Defendants need to be frozen.  The SEC has presented evidence showing that Defendants have already dissipated or misappropriated most of the investor funds raised, and are likely to continue to do so to the extent they retain any control or influence over the assets.  Until late August 2015, Ascenergy spent funds from its accounts for many purposes, but made virtually no oil and gas related

disbursements.  Most importantly, in late August 2015, Ascenergy transferred $3.8 million—virtually all of the remaining funds—to Pyckl, which has no apparent connection to the oil and gas business.  These transfers appear part of Defendant's efforts to stonewall the SEC and avoid the authority of the U.S. government.  Absent a freeze, Defendants and Relief Defendants will be free to misuse and dissipate any new and remaining funds or assets that might otherwise be used to satisfy any monetary relief ordered by the Court and, potentially, returned to investors.  Accordingly, the SEC's Motion for Temporary Restraining Order is **GRANTED**.

The granting of the SEC's Motion notwithstanding, the SEC has not produced evidence that Ascenergy or either of the Relief Defendants cannot be served personally with the Complaint, this Motion for Temporary Restraining Order and the Court's Order.  Consequently, to the extent that the SEC's motion seeks alternative service as to those documents on those parties, the Motion will be **DENIED without prejudice**.  However, in light of Gabaldon's past acts in avoiding the SEC's subpoenas and his claims to have left the country and to no longer reside at his last known address, the SEC may use alternative service as to Gabaldon. Additionally, as the SEC has not provided sufficient basis for its requested departure from the time periods, notice provisions, and other requirements of the Federal Rules of Civil Procedure regarding discovery included in its motion, this request is also **DENIED without prejudice**.

## IV.  <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order (ECF No. 5) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined in the offer or sale of any securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails from, directly or indirectly:

(a) Employing any device, scheme, or artifice to defraud;

(b) Obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading; or

(c)  Engaging in any transactions, practices or courses of business which operate or would operate as a fraud or deceit upon any purchaser or prospective purchaser.

[Securities Act 17(a) (15 U.S.C. 77q(a))].

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from making use of any means or instrumentalities of interstate commerce or of the mails, or of any facility of a national security exchange, directly or indirectly, in connection with the purchase or sale of any security:

(a) To employ any device, scheme, or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, light of the circumstances under which they were made, not misleading;

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person; or

(d) To use or employ any manipulative or deceptive device or contrivance in contravention of a rule or regulation prescribed by the Securities and Exchange Commission.

[Exchange Act § 10(b) (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. 240.10b-5)].

**IT IS FURTHER ORDERED** that Defendants, Relief Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from, directly or indirectly, making any payment or expenditure of funds, incurring any additional liability (including, specifically, by advances on any line of credit and any charges on any credit card), or effecting any sale, gift, hypothecation or other disposition of any asset, pending provision of sufficient proof to the Court (and entry of an Order making a finding) of sufficient funds or assets to satisfy all claims alleged in the Commission's Complaint, or the posting of a bond or surety sufficient to assure payment of any such claim.

Further, Wells Fargo Bank, N.A., and any other bank, savings and loan association, trust company, broker-dealer, internet or "e-commerce" payment processer, or other financial or depository institution, or entity, or individual holding accounts or assets for or on behalf of any Defendants or Relief Defendants shall make no transactions in monies, assets, or securities (excepting liquidating necessary as to wasting assets) and no disbursement of monies, assets, or securities (including extensions of credit, or advances on existing lines of credit), including the honor of any negotiable instrument (including any check, draft, or cashier's check) purchased by or for any Defendants or Relief Defendants, unless otherwise ordered by this Court.

To effectuate the provisions of this section, the Commission may cause a copy of this Order to be served on any bank, savings and loan association, trust company, broker-dealer, internet or "e-commerce" payment processer, or other financial or depository institution by United States mail, email or facsimile as if such service were personal service, to restrain and enjoin any such institution from disbursing funds, directly or indirectly, to or on behalf of any Defendants or Relief Defendants, or any companies or persons or entities under their control.

Pending further Order of this Court, any bank, savings and loan association, trust company, broker-dealer, internet or "e-commerce" payment processer, other financial or depository institution, business entity, or person that holds or has held, controls or has controlled, or maintains or has maintained custody of any of Defendants' or Relief Defendants' monies, assets, or securities at any time since January 1, 2013, shall:

A.     Prohibit Defendants and Relief Defendants and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of Defendants' or Relief Defendants monies, assets, or securities except as directed by further Order of the Court;

B.     Deny Defendants and Relief Defendants and all other persons access to any safe deposit box that is: (i) owned, controlled, managed, or held by, on behalf of, or for the benefit of any Defendants or Relief Defendants, either individually or jointly; or (ii) otherwise subject to access by any Defendants or Relief Defendants;

C.     Provide counsel for the Commission within five (5) business days of receiving a copy of this Order, a statement setting forth:

      i.     the identification number of each and every account or other asset owned, controlled, managed, or held by, on behalf of, or for the benefit of any Defendants or Relief Defendants, either individually or jointly;

     ii.     the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the

name of the person or entity to whom such account or other asset was

remitted; and

   iii. the identification of any safe deposit box that is owned controlled, managed, or held by, on behalf of, or for the benefit of any Defendants or Relief Defendants, either individually or jointly, or is otherwise subject to access by any Defendants or Relief Defendants;

D.     Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, Internal Revenue Service Form 1099s, and safe deposit box logs; and

E.     This immediate asset freeze shall include, but not be limited to, the following accounts:

| Institution | Account Name | Last 4 digits of Account Number |
|---|---|---|
| Wells Fargo Bank, N.A. | Ascenergy LLC | 3669 |
| Wells Fargo Bank, N.A. | Ascenergy LLC | 3665 |
| Wells Fargo Bank, N.A. | Ascenergy LLC | 3673 |
| Wells Fargo Bank, N.A. | Ascenergy LLC | 3681 |
| Wells Fargo Bank, N.A. | Ascenergy LLC | 0623 |
| Wells Fargo Bank, N.A. | Ascenergy LLC | 0656 |

| Wells Fargo Bank, N.A. | Ascenergy LLC | 0631 |
|---|---|---|
| Wells Fargo Bank, N.A. | Ascenergy LLC | 0649 |
| Wells Fargo Bank, N.A | Alanah, LLC | 1768 |
| Wells Fargo Bank, N.A. | Pyckl LLC | 0199 |
| Wells Fargo Bank, N.A. | Joey Gabaldon | 1841 |
| Wells Fargo Bank, N.A. | Joey Gabaldon | 6481 |
| Wells Fargo Bank, N.A | Ascenergy LLC - Credit Card | 4070 |
| Wells Fargo Bank, N.A | Ascenergy LLC - Credit Card | 4047 |

**IT IS FURTHER ORDERED** that Defendants, Relief Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from destroying, removing, mutilating, altering, concealing, or disposing of, in any manner, any of their books and records or any documents relating in any manner to the matters set forth in the SEC's Complaint, or the books and records of any entities under their control, unless otherwise ordered by this Court.

**IT IS FURTHER ORDERED** that each Defendant is ordered to provide an interim accounting, under oath, within ten days of the issuance of this Order or three days prior to any hearing on the preliminary injunction, whichever is sooner, detailing (a) all moneys and other benefits received, directly and indirectly, as a result of the activities alleged in the Complaint (including the date on which the moneys or other benefit was received and the name and all contact information for the person paying the money or providing the benefit), (b) all assets of the Defendant, wherever they may be located and by whomever they may be held (including the name and all contact information for the holder and the amount or value of the holdings), and (c) all accounts with any financial or brokerage institution maintained in the name of, on

behalf of, or for the benefit of the Defendant (including the name and all contact information for the account holder and the account number and the amount held in each account) held at any point during the period from January 1, 2013 through the date of the accounting.  The accounting shall be sufficient to permit a full understanding of the flow of funds from the investors to Defendants and to their present location to the extent known or within the Defendants' power to learn.

**IT IS FURTHER ORDERED** that the SEC's request to dispense with the time periods, notice provisions, and other requirements of the Federal Rules of Civil Procedure regarding discovery is **DENIED without prejudice** and may be filed separately as a discovery motion to be addressed by the Magistrate Judge assigned to this case.

**IT IS FURTHER ORDERED** that, unless extended by agreement of the parties or further Court order, the portions of this Order that constitutes a temporary restraining order shall expire on **Thursday, October 29, 2015, at 5:00 P.M.**  All other provisions of this order, including the asset freeze, shall remain in full force and effect until specifically modified by further order of this Court.

**IT IS FURTHER ORDERED** that defendants shall show cause, if there be any, to this Court on **Thursday, October 29, 2015, at 2:30 P.M**. in **Courtroom 7D** of the United States District Court, 333 S. Las Vegas Blvd., Las Vegas, NV 89101, why this Court should not enter an Order preliminarily enjoining them from committing further violations of the respective provisions of the federal securities laws that defendants have been restrained from violating pursuant to this Order.  Defendants shall also show cause, if there be any, at that time why this Court should not continue against them the other relief imposed with respect to them by this Order.

**IT IS FURTHER ORDERED** that Defendants shall file with this Court any opposing papers in response to Plaintiff's Motion for Preliminary Injunction no later than **Thursday,**

**October 22, 2015, at 4:00 P.M.**

**IT IS FURTHER ORDERED** that the SEC shall have until **Tuesday, October 27, 2015, at 4:00 P.M.**, to file with the Court its Reply and serve them on the defendants by the most expeditious means available.

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission and email, upon any entity or person that may have possession, custody, or control of any documents or assets of defendants, or that may be subject to any provision of this Order, and, additionally, that representatives of the SEC are specially appointed by the Court to effect service.  Service of the summons, Complaint, Motion for Temporary and Preliminary Injunction or other process may be effected by U.S. Marshall or Deputy U.S. Marshall, or in accordance with Federal Rule of Civil Procedure 4.

**IT IS FURTHER ORDERED** that to the extent the SEC's Motion seeks to obtain permission for alternative means of service on Ascenergy or the Relief Defendants for the Complaint, this Motion for Temporary Restraining Order, and this Order, it is hereby **DENIED without prejudice**.  However, the SEC and its representatives are authorized to serve all pleadings and other papers (including the Summons, the Complaint, and court orders) personally, by facsimile, by electronic mail, by overnight courier, or by mail upon Defendant Gabaldon, or by an alternative provision for services permitted by Rule 4 of the Federal Rules of Civil Procedures, or as this Court may direct by further order.

**DATED** this 15th day of October, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge